IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2012

## ELMI ABDI v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-B-1061    Steve Dozier, Judge**

_____

**No. M2011-02095-CCA-R3-PC - Filed October 26, 2012**

_____

A Davidson County jury convicted the Petitioner, Elmi Abdi, of aggravated robbery, a Class B felony, and the trial court sentenced him as a Range III offender to thirty years in the Tennessee Department of Correction. This Court affirmed the Petitioner's convictions and his status as a Range III offender on direct appeal. *State v. Elmi Abdi*, No. M2009-01614-CCA-R3-CD, 2010 WL 2977892 (Tenn. Crim. App., at Nashville, July 29, 2010), *perm. app. denied* (Tenn. Jan. 18, 2011). The Petitioner filed a pro se petition for post-conviction relief, which was amended by appointed counsel. The post-conviction court denied the petition after a hearing. On appeal, the Petitioner contends that he received the ineffective assistance of counsel at trial and during his sentencing. After a thorough review of the record and applicable authorities, we affirm the post-conviction court's dismissal of his petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Robert Brooks, Memphis, Tennessee, for the appellant, Elmi Abdi.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Background**

**A.  Trial**

This cases arises out of the robbery of the Crossland Economy Studio Hotel on Murfreesboro Pike in Nashville on January 1, 2008, for which the Petitioner was indicted for one count of aggravated robbery. In our opinion affirming the Petitioner's conviction and sentence, we summarized the evidence against the Petitioner as follows:

At trial, Zina Aboona, the victim, testified that she was a general manager with Extended Stay Hotels and was working when the hotel was robbed. The victim recalled that she opened the hotel the morning of New Year's Day and the first desk clerk arrived at 8:00 a.m. Soon after, the [Petitioner] walked into the lobby and approached the front desk, asking for a room. The victim immediately recognized the [Petitioner] when he walked in the door. She explained that she had a memorable encounter with the [Petitioner] on an occasion several years earlier at the same hotel. On both occasions, the victim noticed that the [Petitioner] spoke with a Somalian accent.

The victim informed the [Petitioner] that they were sold out from the previous night and, within a "split second," the [Petitioner] demanded money. The [Petitioner] put one hand in his pocket and placed it on the counter, and he made his other hand into the shape of gun and pointed it at the victim. The victim was convinced that the [Petitioner] had a gun in his pocket based on "the way that it pointed in the pocket." The victim gave the [Petitioner] $183.91 from the cash drawer. The [Petitioner] ordered the victim to get on the floor and not to look at him or he would shoot her. After the victim heard the [Petitioner] leave, she pressed the lock button for the door and called 911. The victim testified that she was "terrified" during the encounter.

The victim recalled that the day after the robbery, Detective Jeff Ball with the Metropolitan Nashville Police Department showed her a photographic lineup, from which she identified the [Petitioner]. The victim also identified the [Petitioner] in court and said that she was 100% positive he was the person who entered the hotel on January 1, 2008. She estimated that the encounter lasted approximately five minutes and said that the area was well-lit. The victim noted that the hotel had a surveillance system that captured the robbery, and she provided the footage to the police. The DVD of the encounter was played for the jury.

On cross-examination, the victim acknowledged that the robber was

2

wearing mirrored sunglasses, a knit cap, and a jacket. She said that she did not remember the color of his pants or see what kind of car he drove. She also acknowledged that she did not actually see a gun.

Detective Barry Burk with the Metropolitan Nashville Police Department testified that he responded to the scene in this case and spoke with the victim. The victim related the details of the aggravated robbery and allowed him to watch the surveillance video. Based on the video and his discussion with the victim, Detective Burk developed the [Petitioner] as a possible suspect.

Detective Jeff Ball testified that he collected the surveillance video from the hotel the day after the robbery. The victim came to the police station and viewed a photographic lineup, from which she identified the [Petitioner]. Detective Ball obtained a warrant for the [Petitioner's] arrest based on the victim's identification and other evidence, and he arrested the [Petitioner] around 9:00 p.m. on January 2, 2008. Detective Ball interviewed the [Petitioner] and, at one point, escorted the [Petitioner] to his office to show him the surveillance video from the hotel. An excerpt of the interview was played for the jury in which the [Petitioner] was asked upon returning to the interview room, "Well, what did you think?" and the [Petitioner] responded, "The person that looked like me is-that's me."

On cross-examination, Detective Ball explained that the [Petitioner] was shown the surveillance video in his office because the interview room did not have the necessary equipment for watching a video. Detective Ball acknowledged that none of the suspects in the photographic lineup were wearing sunglasses or a hat even though the suspect was described as having worn sunglasses and a hat.

Following the conclusion of the proof, the jury convicted the [Petitioner] of aggravated robbery.

*State v. Elmi Abdi*, No. M2009-01614-CCA-R3-CD, 2010 WL 2977892, at *1-2 (Tenn. Crim. App., at Nashville, July 29, 2010), *perm. app. denied* (Jan. 18, 2011). We affirmed the Petitioner's conviction and his sentence. *Id.* at *3-4.

## B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, alleging that he had received

the ineffective assistance of counsel. The post-conviction court appointed counsel, who filed an amended petition. The post-conviction court held a hearing on the amended petition, during which the parties presented the following evidence: The Petitioner's trial counsel ("Counsel") testified that he was appointed to represent the Petitioner at the arraignment, and he represented the Petitioner during his preliminary hearing and at trial. Counsel said the Petitioner requested and was appointed new counsel for his appeal. Counsel described his relationship with the Petitioner as "somewhat difficult," saying that the two did not see "eye to eye" on things that Counsel found hard to resolve. Counsel noted that, for instance, he and the Petitioner had a disagreement about the Petitioner's applicable sentencing range. Counsel said that he tried to explain to the Petitioner the applicable sentencing range, but the Petitioner refused to accept what Counsel told him about the range. Counsel said he and the Petitioner could not agree on the number of prior convictions the Petitioner had on his criminal record.

Counsel recalled that the Petitioner sent him some letters before trial, some of which expressed the Petitioner's desire to have new counsel appointed for the trial. Counsel said that he "probably" brought the trial court's attention to the Petitioner's desire. Counsel testified that he and the Petitioner did not disagree about strategic issues but, rather, their disagreements centered around things that, factually, the Petitioner was not willing to accept. Counsel expressed his belief that a new attorney could not have fixed those issues. Counsel also noted that his disagreements with the Petitioner were not "volatile" and that the two got along during the trial.

Counsel testified he filed several motions, a motion for severance, a motion for discovery on his prior convictions, a motion about prior bad acts and identification of the Petitioner. Counsel recalled that, on the motion regarding the introduction of the Petitioner's prior bad acts, the trial court ruled that the State's witness could testify that she recognized the Petitioner from a prior traumatic event but that she could not discuss that it was a prior robbery.

Counsel testified that sentencing was difficult because the Petitioner wanted him to argue that he was not a Range III offender. Counsel said that he had obtained certified copies of all the Petitioner's previous convictions and shown them to the Petitioner but that the Petitioner did not agree with them. Counsel felt that he could not present an argument to the trial court that was contrary to the Petitioner's position but that he also could not make an argument to the trial court that he knew was not true factually. Therefore, at the sentencing hearing, the trial court allowed the Petitioner to present his own authorities and make his own argument about why the Petitioner believed he was a Range I offender. Counsel made other arguments on the Petitioner's behalf but did not mention the sentencing range argument so as not to undermine the evidence the Petitioner presented.

4

During cross-examination, Counsel testified that he met with the Petitioner on numerous occasions and reviewed the discovery the State had provided , which included a videotape recording of the robbery. The two discussed possible defenses, but the Petitioner was adamant that he wanted to argue that he was not the person who committed the robbery. Counsel said that he and the Petitioner discussed whether the Petitioner should testify. He said, from a strategic standpoint, the Petitioner would not have made a good witness. The Petitioner had a hard time, in Counsel's opinion, "talking through the version [of events] coherently." Counsel also feared that the Petitioner would make "flat-out admissions" while testifying because the Petitioner made admissions when the police interviewed him. Those admissions were about another crime, and Counsel had successfully had the Petitioner's statement redacted before trial. Counsel, however, was "almost positive" that the Petitioner would start talking about that other case if he testified and that the jury would then hear evidence of another aggravated robbery. Counsel said the Petitioner never expressed a strong desire to testify, so the two did not discuss this issue in depth.

The Petitioner testified that he wrote Counsel seven or eight letters asking to see the videotape of the robbery before trial. He said he did not see the video recording until three days before trial. The trial court asked the Petitioner if he had seen the tape recording of the police interview, and the Petitioner responded that the police showed him a videotaped recording of another robbery perpetrated by a man that "looked just like [him]." He insisted that the video the police officers showed him was different than the one he reviewed before his trial.

The Petitioner said Counsel only visited him in jail on one occasion and that was two days before his trial. Counsel told the Petitioner that the State wanted to give him "a life sentence." The Petitioner testified he and Counsel did not agree on this point, and he told Counsel he wanted him "off" his case. To which, Counsel responded, "okay." The two went before the trial court, and the trial court informed the Petitioner that he could not fire his attorney three days before trial.

The Petitioner said Counsel did not listen to his version of the facts. Counsel advised the Petitioner to take the State's plea agreement offer of twenty years, to be served at 100%. The Petitioner informed Counsel he would not take this offer. The Petitioner again noted that Counsel did not believe his assertion that the videotape the State provided was different from the one that the police showed him during his interview with police.

The Petitioner said Counsel did not file motions that the Petitioner asked be filed and did not meet with him in jail. The Petitioner said he wanted to testify on his own behalf, but Counsel told him not to testify.

The Petitioner testified that he tried to explain to Counsel his sentencing range. He told Counsel that Counsel needed to listen to him. Counsel, he said, told him that the State was going to try to "give [him] life." The Petitioner told Counsel he thought Counsel was wrong.

During cross-examination, the Petitioner said Counsel did not investigate his case properly because Counsel should have investigated where the Petitioner was at the time of the robbery. He conceded that, when he viewed the videotaped recording with police officers, he stated that the person on the video "looks like me, that's me." He explained that because he has an accent, he can be difficult to understand. What he intended to say was, that the person "look[ed]" like him. The Petitioner agreed he told police that he had been out drinking heavily on the night of the robbery.

The Petitioner said he told Counsel he had "alibi people" but that Counsel never investigated them. The Petitioner said his roommate, Taiik, whose last name he did not know, would have been an alibi witness. The Petitioner could not recall whether he informed the police about Taiik.

The Petitioner testified that Counsel told him that, if he testified at trial, his prior convictions would be admissible. He chose not to testify based upon Counsel's advice. He agreed he told the trial court that it was his choice not to testify.

On redirect examination, the Petitioner testified that he also spoke Somali and that he sometimes had difficulty speaking in English. Additionally, he sometimes does not understand when people speak to him in English.

Counsel was recalled and testified that his notes did not indicate that the Petitioner informed him that he had an alibi and he did not recall the Petitioner ever saying that he had an alibi. He said that he would have investigated any alibi witness the Petitioner identified. On cross-examination, Counsel testified he was aware that the Petitioner's first language was not English. He said the two had to spend more time talking through things so that the Petitioner would fully understand them. Counsel said that part of the defense they presented to the jury included that the Petitioner misspoke when the police officers interrogated him, because English was not his primary language.

Based upon this evidence, the trial court dismissed the Petitioner's petition for post-conviction relief. The post-conviction court found:

> The Court accredits the testimony of [C]ounsel that he thoroughly discussed the merits of the [Petitioner's] testifying and would have

investigated an alibi. The Court insured that the [Petitioner] properly waived his right to testify. Furthermore, the Court finds that [C]ounsel did not cause another conviction to be introduced at trial. The Court did not rule the evidence of the other conviction admissible and it was therefore never introduced to the jury.

Based upon the foregoing analysis, the Court is of the opinion the petition for post-conviction relief shall be denied. The [P]etitioner has failed to prove by clear and convincing evidence the factual allegations in his petition. He has not demonstrated by the requisite standard that [C]ounsel's performance was deficient or that [C]ounsel was not acting with the competence required of attorneys in criminal cases. The petition is dismissed.

(citation omitted). It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that, because Counsel was ineffective, the trial court erred when it dismissed his petition. He contends that Counsel failed to consult with the Petitioner at all stages of the trial process, including his decision concerning whether or not to testify. Further, he contends Counsel opened the door to a prejudicial conviction in the State's presentation of evidence. Finally, he contends Counsel was ineffective for failing to challenge the trial court's sentencing the Petitioner as a Range III offender. The State responds that the Petitioner has failed to prove that Counsel was deficient or that Counsel's performance prejudiced the Petitioner. The State further contends that the Petitioner failed to prove any of the claims raised by his petition.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely

de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of

counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (internal quotations omitted).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *See also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *See also Harris v. State*, 875 S.W.2d 662, 665 (Tenn.1994).

In the case under submission, we agree with the post-conviction court that the Petitioner is not entitled to post-conviction relief. The Petitioner contends that Counsel failed to consult with the Petitioner at all stages of the trial process, including his decision concerning whether or not to testify. The post-conviction court accredited Counsel's testimony that he spoke with the Petitioner about the Petitioner testifying on his own behalf. Counsel said he was concerned that the Petitioner would make admissions about another robbery if he testified, as the Petitioner had done in his statement to police. The Petitioner agreed that he and Counsel discussed whether the Petitioner should testify and that he chose not to testify based upon Counsel's advice. We conclude the Petitioner has not proven that Counsel was ineffective in this regard.

The Petitioner next contends Counsel opened the door to a prejudicial conviction in the State's presentation of evidence. The Petitioner's argument in this regard is unclear and we are unable to discern to what conviction he is referring. To the extent that the Petitioner has not provided adequate argument with regard to this issue, it is waived. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Further, Counsel, by filing a pretrial motion, succeeded in excluding all of the Petitioner's prior convictions for aggravated robbery. Counsel also convinced the trial court to limit the State's witness's testimony about her identification of the Petitioner. The witness was not allowed to testify that she could identify the Petitioner because he had previously robbed her. To the extent this issue is not waived, the Petitioner has failed to prove Counsel was ineffective.

Finally, the Petitioner contends Counsel was ineffective for failing to challenge the trial court's sentencing the Petitioner as a Range III offender. This Court previously determined on direct appeal that the Petitioner was properly sentenced as a Range III offender. *Abdi*, 2010 WL 2977892, at *4. The Petitioner has failed to prove Counsel was deficient in this regard.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's dismissal of the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE